UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KAREN HAYES, )<br>)<br>    Plaintiff )<br>)<br> vs. )<br>)<br>ANDREW SAUL, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>    Defendant ) | CAUSE NO. 2:20-CV-159 RLM |

OPINION AND ORDER

Karen Hayes seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). The court heard oral argument telephonically on June 14, and now reverses the Commissioner's decision and remands for further proceedings.

Karen Hayes was 57 years old at the alleged onset of disability (October 16, 2013) and 62 when she was last insured (Dec 31, 2018), had at least a high school education, and had previously worked as a retail manager. She alleged disability due to multiple impairments, including bilateral shoulder impairments, osteoarthritis of the right knee, Morton's neuroma (right foot), degenerative disc disease of the cervical spine, headaches, gastroesophageal reflux disease, and anxiety. Her application was denied twice– once in 2017 and the second time in

2020 – after this court reversed the 2017 decision and remanded the case for further proceedings. *See* Hayes v. Berryhill, Cause No. 2:17cv448-JEM [Doc. No. 19].

The second administrative hearing was conducted in December 2019, at which Ms. Hayes and a vocation expert, Pamela Tucker, testified. Based on the evidence presented, the ALJ found that:

- Ms. Hayes had severe impairments (osteoarthritis of the shoulders (bilateral), Morton's neuroma, right foot; degenerative joint disease, right knee), and non-severe impairments (anxiety, cervical spine, headaches, and GERD).

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, specifically Listings 1.02 (major dysfunction of a joint).

- The opinions of Ms. Hayes treating orthopedic surgeon (Dr. Guido Marra), primary care physician (Dr. John Hoehn), and physical therapist (Jayne Barsic, D.P.T.) regarding her limitations were entitled to "little weight".

- The agency consulting physicians ("DDS doctors") opinions were entitled to "some weight", but the "longitudinal medical records show[ed] improvement of her symptoms and functioning of the upper extremities, particularly in the left shoulder, such that she could reach overhead frequently with the left upper extremity, but only occasionally with the right" (impliedly rejecting the agency physicians' finding that Ms. Hayes could only reach overhead bilaterally occasionally).

- The opinion of the state agency psychological consultant (Kari Kennedy, Psy.D.) that Ms. Hayes' anxiety caused "no restriction of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration,

2

- persistence or pace; and no episodes of decompensation" were entitled to "great weight".

- "[Ms. Hayes'] statements concerning the intensity, persistence and limiting effects of [her] symptoms cannot reasonably be accepted as consistent with the medical evidence and other evidence in the record."

- Ms. Hayes retained the residual functional capacity to perform light work with the following limitations: she could frequently reach overhead with her left upper extremity; occasionally reach overhead with her right upper extremity; frequently reach in all other directions bilaterally; occasionally operate foot controls with her right foot; frequently operate hand controls with her right hand; frequently handle, finger, and feel with her right upper extremity; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally work at unprotected heights; frequently work around moving mechanical parts or operating a motor vehicle; be exposed to vibration occasionally; and perform only semi-skilled work.

- Ms. Hayes couldn't perform her past relevant work as a retail manager (which the vocational expert described as light work), but could perform other work that existed in significant numbers in the national economy, including customer service clerk (95,000 jobs), sales clerk (150,000 jobs) and apparel rental clerk (35,000 jobs).

The ALJ again concluded that Ms. Hayes wasn't disabled within the meaning of the Social Security Act. When the Appeals Council denied Ms. Hayes' request for review, the ALJ's 2020 decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

The court's role in reviewing an administrative decision is limited. If the ALJ applied the correct legal standard and substantial evidence supports her factual determinations, those determinations are conclusive. Shideler v. Astrue, 688 F.3d

3

306, 310 (7th Cir. 2012); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

Ms. Hayes challenges the ALJ's findings at steps 4 and 5. She contends that the ALJ: (1) substituted her own judgment for that of the medical experts and didn't properly evaluate the opinions of her treating orthopedic surgeon, Dr. Guido Marra, or her testimony regarding the symptoms and the limitations her impairments impose; (2) didn't sufficiently support her residual functional

4

capacity; and (3) didn't identify what skills Ms. Hayes had and whether they were transferrable to the type of work the ALJ found she could still perform.

Ms. Hayes asserted similar arguments in her first appeal in 2017. This court reversed and remanded that decision because the ALJ hadn't properly evaluated Dr. Marra's opinions; didn't provide a sound explanation and logical bridge for rejecting those opinions or the opinions of Ms. Hayes' treating physical therapist; and didn't cite medical evidence supporting her residual functional capacity findings, specifically the finding that Ms. Hayes could "frequently" lift overhead. The ALJ's 2020 decision suffers from the same core deficiencies.

Under the regulations that applied when Ms. Hays filed her application in 2014, medical opinions offered by a treating source were generally entitled to greater weight because they're "likely to be the medical professionals most able to provided a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). Their opinion was entitled to controlling weight "as long as it is supported by medical findings and consistent with substantial evidence in the record." Kaminski v. Berryhill, 894 F.3d 870, 874 (7th Cir. 2018)(citing 20 C.F.R. § 404.1527(c)(2)). "When an ALJ doesn't give a medical source's opinion controlling weight, she must apply a number of factors in determining what weight to give it, including the length of the treatment

5

relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and "any factors…which tend to support or contradict the medical opinion". 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

The ALJ appears to have given little or no consideration to those well-established principles. She rejected the medical opinions of all of Ms. Hayes' treating sources because she thought they were inconsistent with the "longitudinal medical record" and/or weren't supported by sufficient objective evidence, but she didn't identify any medical evidence that was actually inconsistent, didn't obtain an updated medical expert opinion, and didn't consider or address the treating physicians' expertise, the length, nature, and extent of their treatment relationship with Ms. Hayes, or the extent to which their opinions were consistent with each other and with the other evidence of record, including the state agency physicians' opinions.

Dr. Marra was an experienced orthopedic surgeon who treated Ms. Hayes for two years (November 2012-2104) for preexisting bilateral shoulder impairments (a full thickness rotator cuff tear in the right shoulder and a partial thickness tear in the left). He performed revision rotator cuff repair and decompression on the right shoulder in February 2013 and indicated in his progress notes that Ms. Hayes was on a "no work" restriction from February 2013-August 2013.

6

In August 2013, Dr. Marra ordered a functional capacity evaluation to determine Ms. Hayes' work limits. The evaluation was notnt in the record, but Dr. Marra indicated in September 2013 that it showed Ms. Hayes was "capable of returning to work at a light or medium duty" and advised told Hayes that she could return to work "with permanent restrictions within the limits of her Functional Capacity Evaluation." (AR 813).

Dr. Marra saw Ms. Hayes again in January 2014, for increased pain in her left shoulder and cervical pain, numbness, and tingling down the right upper extremity following her return to work. He ordered an MRI to see if the partial left rotator cuff tear had progressed. In April 2014, Dr. Marra performed a left shoulder debridement and subacromial decompression and reimposed the "no work" restriction. Four months later, he referred Ms. Hayes for physical therapy and modified her work restrictions to "no overhead lifting and no lifting greater than 5 pounds." (AR 835-39).

Ms. Hayes complained of increased pain with increased activity during her October 2014 follow-up visit, so Dr. Marra ordered a second functional capacity evaluation and continued the work restrictions imposed in August, pending completion of the evaluation. (AR 840-844).

The second evaluation, like the first, wasn't included in the record, but Dr. Marra reported that the evaluation "states she has functional capabilities up to

7

the light to medium physical demand level which is below the medium physical demand level of her prior job. These are her permanent restrictions going forward." (AR 849).

The state agency consulting physicians, Dr. M. Ruiz and Dr. J.V. Corcoran, completed Physical Residual Function Capacity Assessments in January and April 2015 and found that Ms. Hayes had exertional, postural, and manipulative limitations as a result of her shoulder injuries and surgeries. Both opined that she could only occasionally reach overhead bilaterally and that bilateral shoulder pain (post multiple surgeries) and decreased range of motion limited her functional capacity (AR 80-81).

The ALJ gave "little weight" to Dr. Marra's opinions and gave "some weight" to the the agency consulting physicians ("DDS doctors") opinions, but concluded that the "longitudinal medical records show[ed] improvement of [Ms. Hayes] symptoms and functioning of the upper extremities, particularly in the left shoulder, such that she could reach overhead frequently with the left upper extremity, but only occasionally with the right", and based her residual functional capacity findings and hypothetical to the vocational expert on her interpretation of those medical records.

The ALJ made repeated references to the "longitudinal medical record", but didn't specify any medical evidence that was inconsistent with Dr. Marra's findings or the state agency physicians' findings regarding Ms. Hayes' shoulder

8

impairments and limitations. She made no reference to medical evidence that was consistent with Dr. Marra's opinions (*e.g.* the state agency physicians' assessments), didn't address the significance of Dr. Marra's expertise or extended treating relationship with Ms. Hayes; didn't seek clarification regarding the "permanent restrictions" Dr. Marra imposed or consider that his use of the terms "medium physical demand level" might have differed from the Administration's definition of medium work, and appears to have substituted her own interpretation of the medical records for that of Ms. Hayes' treating physicians and the state agency physicians, contrary to the rules and regulations that govern disability determinations. *See* 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6); Stage v. Colvin, 812 F.3d 1121, 1125 (7th Cir 2016). The ALJ's flawed assessment of Dr. Marra's opinions tainted her findings with respect to Ms. Hayes's credibility, residual functional capacity, and ability to perform other work. Reversal and remand is therefore warranted.

The court takes no position on whether the evidence as a whole is sufficient to support a finding of no disability. It simply concludes that the ALJ didn't build the required logical bridge between her findings and conclusion.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   July 20, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court